IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IVANTI, INC. and LANDESK SOFTWARE SINGAPORE PTE., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN SHEA, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION <br><br><br> Case No. 2:18-CV-92 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction. For the reasons stated below, the Court will deny Defendant's Motion.

I. BACKGROUND

Plaintiff Ivanti, Inc. ("Ivanti") is a corporation with its principal place of business in South Jordan, Utah. Plaintiff LANDesk Software Singapore Pte., Ltd. ("LANDesk Singapore") is a corporation formed under the laws of Singapore, with its principal place of business in Singapore, and is a wholly-owned subsidiary of Plaintiff Ivanti, Inc. Plaintiffs are international information technology solutions companies which distribute products and services around the world.

Defendant Stephen Shea ("Defendant") is a United States citizen residing in Chiang Mai, Thailand. Defendant was employed in the Asia Pacific region by Plaintiffs, or the companies purchased and rebranded by Ivanti, for 13 years. The Asia Pacific region includes multiple Southeast Asian countries, Australia, and New Zealand. During Defendant's employment, he "headed up the [Asia Pacific] region of Ivanti's supply chain sales organization, literally building

Ivanti's business in that region from scratch into a multimillion-dollar per year sales organization."[1] Originally, Defendant worked as a contractor for Wavelink, a Utah-based company later acquired by LANDesk. In October 12, 2012, Defendant entered into an employment agreement with LANDesk Singapore ("the Agreement"). LANDesk was rebranded as Ivanti in 2017.

On October 4, 2017, Defendant elected to terminate his employment with Plaintiffs. Defendant cited a desire to take time off to care for his elderly parents, who reside in California, as the reason for his departure. Defendant's official last day with the company was November 3, 2017.

Since Defendant's departure, Plaintiffs learned that Defendant has been contacting and soliciting Plaintiffs' customers on behalf of StayLinked, one of Plaintiffs' direct competitors. Plaintiffs believe that Defendant has used confidential trade secret information in his attempts to convince Plaintiffs' customers to switch to StayLinked in violation of the Agreement. Plaintiffs also believe that Defendant began the process of supporting StayLinked months before tendering his resignation.

As a result of this alleged conduct, Plaintiffs issued a cease-and-desist letter to Defendant on January 12, 2018. Defendant responded on January 17, 2018, wherein he admitted knowledge of the Agreement and declined to comply with Plaintiffs' demands. On January 26, 2018, Plaintiffs filed a Complaint against Defendant in this Court for injunctive relief. That same day, Plaintiffs filed a Motion for Temporary Restraining Order to enjoin Defendant from further competing with Plaintiffs and misappropriating thier trade secrets. Upon receiving the Motion, the Court scheduled a hearing for February 7, 2018. Plaintiffs served Defendant with their

---

[1] Docket No. 2, at 2.

Complaint, Motion, and Notice of Hearing, wherein Defendant was ordered to respond by February 1, 2018. Defendant failed to do so. However, on February 6, 2018, Defendant's attorney filed a Notice of Appearance "for the limited purpose of opposing jurisdiction."[2]

As a result of the Notice, the Court struck the hearing and ordered expedited briefing regarding the Court's jurisdiction over Defendant. The parties filed simultaneous briefing on the matter on February 12, 2016, and filed their respective responses on February 16, 2018. The issue has now been fully briefed and is ripe for decision.

II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(2) is the vehicle by which a party may move for dismissal based on lack of personal jurisdiction. Plaintiffs bear the burden of establishing jurisdiction over Defendant.[3] When a motion to dismiss for lack of personal jurisdiction is brought before trial and supported by affidavits and other written materials, the plaintiff need only make a prima facie showing of jurisdiction.[4] "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits."[5]

Plaintiffs' Complaint invokes federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836, the Federal Defense of Trade Secrets Act ("the DTSA"). "It is well established that when . . . a federal statute provides the basis for jurisdiction, the constitutional limits of due

---

[2] Docket No. 18, at 1.

[3] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[4] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[5] *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

process derive from the Fifth, rather than the Fourteenth, Amendment."[6] Under the Fifth Amendment, before the Court can assert personal jurisdiction over a defendant, the Court must resolve a two-step inquiry. First, the court must determine "whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant."[7] The Court applies the forum state's personal jurisdiction rules unless the applicable federal statute "specifically provide[s] for national service of process."[8] Second, the Court must determine "whether the exercise of jurisdiction comports with due process."[9]

A. JURISDICTION UNDER UTAH'S LONG ARM STATUTE

The DTSA provides that "the district courts of the United States shall have original jurisdiction of civil actions brought under this section."[10] The DTSA does not provide nationwide or worldwide service of process.[11] Therefore, the Court will apply Utah's personal jurisdiction rules. Utah's long arm statute supports personal jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[12] Where "the state long arm statute supports

---

[6] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[7] *Id.* at 1209 (quoting *Republic of Pan.*, 119 F.3d at 942).

[8] *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997) (citing *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990)); *see also* Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . or (C) when authorized by a federal statute.").

[9] *Peay*, 205 F.3d at 1209 (quoting *Republic of Pan.*, 119 F.3d at 942).

[10] 18 U.S.C. § 1836(c).

[11] *See id.* Defendant was served with process in Thailand.

[12] Utah Code Ann. § 78B-3-201(3); *see also Starways, Inc. v. Curry,* 980 P.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.'") (quoting *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985)).

personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry."[13]

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'"[14] "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[15]

1. *Minimum Contacts*

Defendant argues he does not have sufficient contacts with Utah because: Defendant resides in South East Asia; Defendant's employment activities have been limited to the Asia Pacific region; Defendant's employment contract is with LANDesk Singapore, not Ivanti; and Defendant's Utah contacts are minimal.[16]

Plaintiffs state the following facts in contradiction to Defendant's assertions. Defendant worked for Plaintiffs and its predecessors, all of which were Utah based, for 13 years. Defendant signed the Agreement with LANDesk Singapore upon Defendant's alleged misrepresentation that he lived in Singapore, but, in fact, Defendant does not live in Singapore and does minimal business in Singapore. Plaintiffs further allege that Defendant's relationship with LANDesk Singapore is merely a "paper" relationship.[17] Notably, the Agreement states that, while Defendant is employed in Singapore, the Company retains the discretion to relocate Defendant

---

[13] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[14] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

[15] *Id.*

[16] Docket No. 24, at 4.

[17] Docket No. 26, at 2.

"at any time to any location from which the Company and its related corporations may operate."[18]

Plaintiffs further allege "Ivanti does not maintain a significant operational presence in Singapore, and its employees, like Shea, . . . ultimately report to and take direction from LANDesk/Ivanti's base in Utah."[19] Further, the Agreement frequently outlines Defendant's obligations as being owed to the "LANDesk Group," which is defined as any related corporations to LANDesk Singapore, not merely to LANDesk Singapore.[20] The Agreement also states that Defendant shall report to Steve Bemis, who is based in Seattle, Washington, not Singapore.[21]

Regarding Defendant's contacts in Utah, Plaintiffs allege that Defendant is in frequent contact with Plaintiffs' Utah-based headquarters. Plaintiffs' Utah headquarters is home to Plaintiffs' leadership in operations, sales, production, engineering, marketing, human resources and legal. As argued by Plaintiffs, Defendant must have been in frequent contact with these entities in order to perform his job duties effectively. For example, materials and information regarding the products, pricing, and sales strategies employed by Defendant were all developed in Utah and Defendant needed to be in frequent contact with Plaintiffs' headquarters in order to obtain and stay current on this information. In fact, a search of Defendant's work emails from June 2014 to November 2017 showed 1,047 emails containing the terms "Utah" or "UT."[22]

---

[18] Docket No. 2 Ex. A, at 2.
[19] Docket No. 25 Ex. 1, at 3.
[20] *See* Docket No. 2, Ex. A.
[21] *Id.* at 1.
[22] Docket No. 25 Ex. 2.

Other searches revealed thousands of additional emails exchanged between Defendant and various Utah-based employees during the same time period.[23]

Defendant also participated in bi-weekly telephone conversations with Plaintiffs' Utah-based employees Alex Evans, Ivanti's Product Manager, and Brandon Black, Ivanti's Global Director of Systems & Solutions.[24] During these phone calls, Plaintiffs allege that Defendant received sensitive information about strategy, products, and pricing.[25] Finally, Defendant made a trip to Plaintiffs' headquarters in 2014, 2015, and 2017 for his work duties. Each trip lasted between five and nine days. Plaintiffs argue that the above-listed contacts provides specific jurisdiction over Defendant.[26]

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of the defendant's forum-related activities.'"[27]

Purposeful direction will be found "where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum."[28] "Due process requires that a defendant be haled into court in a forum

---

[23] *Id.*

[24] *Id.* Ex. 1, at 5–6.

[25] *Id.* at 6.

[26] General jurisdiction is not at issue. Docket No. 26, at ii.

[27] *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Shrader*, 633 F.3d at 1239).

[28] *Burger King Corp.*, 471 U.S. at 476 (internal quotation marks and citations omitted).

State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State."[29]

The Tenth Circuit recently enumerated three instances where an out-of-state defendant's activities may arise to purposeful direction: "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')."[30]

First, under the "continuing relationships" framework, purposeful direction may be found where a defendant "purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum state.'"[31] The "defendant's solicitations of or direct communications with forum state residents provide 'some evidence' suggesting purposeful direction."[32]

Second, "[a]n out-of-state defendant's 'continuous exploitation of the forum state market' may also satisfy the purposeful direction requirement."[33] This framework has been employed by courts where the defendant is alleged to have actively solicited business, online or otherwise, from a specific state.

Finally, under the third framework, purposeful direction may be established, "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the

---

[29] *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Burger King Corp.*, 471 U.S., at 475).

[30] *Old Republic Ins. Co.*, 877 F.3d at 905.

[31] *Id.* (internal quotation marks and citation omitted).

[32] *Id.* (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)).

[33] *Id.* at 905–06 (citation omitted).

8

forum state."[34] Importantly, under this framework, "the plaintiff cannot be the only link between the defendant and the forum"[35] Further, the "mere injury to a forum resident is not a sufficient connection to the forum."[36] Instead, "[t]he proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."[37]

Plaintiffs' arguments that Defendant purposefully directed his activities at Utah are most closely in line with this third "harmful effects" framework. This framework reflects the Supreme Court's decision in *Calder v. Jones*.[38] In *Calder*, the plaintiff, a professional entertainer who resided and worked in California, brought a libel suit against the National Enquirer, Inc., and several of its employees. The "allegedly libelous story concerned the California activities of a California resident," was "drawn from Californian sources, and the brunt of the harm . . . was suffered in California."[39] As a result, the Supreme Court held that jurisdiction was "proper in California based on the 'effects' of [the defendants'] Florida conduct in California."[40] In *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*,[41] the Tenth Circuit enumerated a three-part test, in light of the Supreme Courts' *Calder* decision, requiring a finding of "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state."[42]

---

[34] *Id.* at 907.

[35] *Walden*, 134 S. Ct. at 1122.

[36] *Id.* at 1125.

[37] *Id.*

[38] 465 U.S. 783 (1984).

[39] *Id.* at 788–89.

[40] *Id.* at 789.

[41] 514 F.3d 1063 (10th Cir. 2008).

[42] *Id.* at 1072.

The Court finds Defendant's actions meet these requirements. First, Plaintiffs have alleged that Defendant misappropriated its trade secrets in violation of the DTSA. Such action, if true, is purposeful. Second, Defendant acquired these alleged trade secrets through his frequent contacts in Utah. He must have understood that the sensitive information was developed in Utah for the benefit of the Utah company. Given his close relationship with Plaintiffs' headquarters in Utah, Defendant also must have known the harm of the alleged appropriation would be felt in Utah. Therefore, the *Calder* test is met. Similar to the defendant in *Calder*, the alleged misappropriation concerned information created in Utah, by a Utah-based company, and was obtained as a result of Defendant's relationship with Utah-based employees. Further, the brunt of the injury from the misappropriation of the trade secrets is felt primarily in Utah. Therefore, jurisdiction is proper in Utah based on the effects of Defendant's conduct in Utah.

Defendant argues that the Supreme Court and the Tenth Circuit have more recently recognized a more "restrictive" approach to *Calder*. Defendant is correct that controlling case law has more recently recognized that "the *Calder* effects test requires showing more than simply harm suffered by a plaintiff who resides in the forum state."[43] "The proper question is not where the plaintiff experienced a particular injury effect but whether the defendant's conduct connects him to the forum in a meaningful way."[44]

Even under the more restrictive view, Plaintiffs have alleged facts supporting that Defendant purposefully directed his activities at Utah. The alleged offending conduct arises from Defendant's frequent contacts with Plaintiffs' headquarters in Utah. As a result of these Utah-based contacts, Defendant obtained sensitive information over years of employment. Upon leaving his employment with the Utah-based company, Defendant allegedly misappropriated this

---

[43] *Old Republic Ins. Co.*, 877 F.3d at 917.
[44] *Walden*, 134 S. Ct. at 1118.

sensitive information for the benefit of himself and Plaintiffs' direct competitor, fully aware that such conduct would directly harm Plaintiffs' Utah-based business. Such conduct certainly connects Defendant to Utah "in a meaningful way."

Defendant argues that this case is more analogous to *Shrader v. Biddinger*, wherein the Tenth Circuit found jurisdiction was not proper. The plaintiff in *Shrader* sought to bring suit in Oklahoma against out-of-state defendants. The suit concerned the posting and sending of an allegedly defamatory email. The Tenth Circuit found no purposeful direction where: "Oklahoma was not the focal point of the email posted . . . , either in terms of its audience or its content"[45] the email concerned work that was "marketed and sold worldwide through the internet," and not associated with Oklahoma;[46] the plaintiff's "professional reputation in the trading community was not tied to Oklahoma, as Ms. Jones's was to the California entertainment industry in *Calder*;"[47] and the email was not received by a single person residing in Oklahoma.[48] The only facts supporting jurisdiction was that plaintiff resided and produced his work in Oklahoma. *Shrader* is easily distinguishable from the case at bar. The attenuated relationship between the *Shrader* defendants and Okalahoma is far less significant than the involved relationship between Defendant with the Utah-based Plaintiffs.

Having found that Defendant purposefully directed his activities to Utah, the Court must next determine whether Plaintiffs' injuries arise out of Defendant's forum-related activities. As stated, Plaintiffs allege they are injured by Defendant's misappropriation of their trade secrets. Defendant acquired Plaintiffs' alleged trade secrets over the years he worked for Plaintiffs and

---

[45] *Shrader*, 633 F.3d, at 1245.

[46] *Id*.

[47] *Id.*

[48] *Id.* at 1248.

through his regular contact and exchange with Plaintiffs' employees in Utah. Therefore, the alleged injuries arise out of Defendant's forum-related activities and Plaintiffs have shown Defendant has sufficient minimum contacts with Utah to allow this Court to exercise jurisdiction, assuming exercising jurisdiction comports with due process.

2. *Due Process Under The Fourteenth Amendment*

Having decided Defendant has sufficient minimum contacts with Utah, the Court must next consider whether exercising jurisdiction offends "traditional notions of fair play and substantial justice"[49] under the Fourteenth Amendment. In determining whether exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice," the Court considers:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[50]

When a court determines the reasonableness of asserting jurisdiction, the court also considers its minimum contacts determination. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."[51]

In considering all the factors, the Court finds that exercising jurisdiction would not violate fair play and substantial justice. As argued by Defendant, the burden on Defendant in litigating the matter in Utah while residing in Thailand is significant. However, Defendant has

---

[49] *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 105 (1987) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

[50] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998).

[51] *Asahi Metal Indus. Co.*, 480 U.S. at 114.

shown the willingness and ability to travel to the United States, both for business and personal reasons. Moreover, Utah has a significant interest in protecting its businesses as well as its business' trade secrets. Further, the Plaintiffs have an interest in obtaining a swift resolution to protect its trade secrets as quickly and effectively as possible.

Finally, Utah is the most effective forum for, and has a greater interest in, the resolution of this matter. Plaintiffs' headquarters are located in Utah and many of the relevant transactions and communications at issue occurred between Defendant and Plaintiffs' Utah-based employees. While the Court acknowledges that the Agreement was executed in Singapore and that one Plaintiff is based in Singapore, that country has minimal interest in this case. Though much of the relevant conduct occurred outside of Utah, in the Asia Pacific region, and though many of the potential witness are similarly located in the Asia Pacific region, the evidence does not suggest that a significant amount of the relevant conduct occurred in Singapore specifically. Neither does the evidence suggest that a significant number of witnesses are located in Singapore. Notably, Defendant does not reside in Singapore. Therefore, resolution in Singapore would require most of the parties and witnesses to litigate the matter in an inconvenient forum that has minimal interest in resolution of the conflict.

In light of the Courts findings that Defendant has sufficient minimum contacts to establish specific jurisdiction with Utah and that exercising jurisdiction would not be unreasonable under the Fourteenth Amendment's due process, the Court finds that Plaintiffs have shown jurisdiction is proper under the first step of the federal question jurisdiction analysis. The Court must, therefore, now determine whether the exercise of jurisdiction comports with the Fifth Amendment.

B. DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

"The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, and both 'were designed to protect individual liberties from the same types of government infringement.'"[52] However, the factors to be considered under each due process analysis differ slightly.

"To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate 'that his liberty interests actually have been infringed.'"[53] "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent.'"[54]

In determining whether Defendant has met this burden, the Court considers the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[55]

---

[52] *Peay*, 205 F.3d at 1212 (quoting *Republic of Pan.*, 119 F.3d at 945).

[53] *Id.* (quoting *Republic of Pan.*, 119 F.3d at 946).

[54] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 478).

[55] *Id.*

"[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[56]

For substantially the same reasons as those discussed in the Fourteenth Amendment due process analysis, the Court finds Defendant has not met his substantial burden in showing his liberty interests have actually been infringed by being required to defend a case in Utah. As stated, the Court acknowledges the difficulty facing Defendant in defending a suit against him in Utah, however the majority of the factors to be considered weigh in favor of exercising jurisdiction over Defendant in Utah.

In light of the above analysis, the Court finds that the Court may properly exercise its jurisdiction over Defendant under the Fifth Amendment.

C.  RULE 4(K)(2)

While the Court has already determined it may properly exercise jurisdiction over Defendant under the Fifth Amendment, the Court finds that, even if Defendant did not have sufficient contacts with Utah to establish jurisdiction, the Court may exercise jurisdiction over Defendant under Rule 4(k)(2) of the Federal Rules of Civil Procedure.

Rule 4(k)(2) states that, for a claim arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." "This Rule 'serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due

---

[56] *Id.*

process.'"[57] To assert jurisdiction under Rule 4(k)(2), the Court must find that (1) Plaintiffs' claim arises under federal law; (2) Defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction does not offend the Constitution.

First, as discussed, Plaintiffs' DTSA claim is a federal claim. Second, Defendant has affirmatively stated that he is not subject to jurisdiction in any state within the United States.[58] While the Tenth Circuit has not yet addressed who bears the burden of establishing that a defendant is not subject to jurisdiction in any other state, district courts within this circuit have followed the Seventh Circuit's reasoning and held that,

> a defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).[59]

Defendant has not identified another state in which suit could be brought. In fact, Defendant has affirmatively asserted he is not subject to jurisdiction in any state within the United States.

Next, in determining whether jurisdiction does not offend the Constitution under Rule 4(k)(2), the Court first analyzes Defendant's contacts with the United States as a whole, not just the forum state and then looks to the Fifth Amendment fairness factors. Defendant has sufficient

---

[57] *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360–61 (D. Colo. 2014), *aff'd sub nom. Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799 (10th Cir. 2016) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com De Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009)).

[58] Docket No. 24, at 7 ("First, there is no U.S. state that can assert personal jurisdiction over Mr. Shea, as he has been continuously living in Southeast Asia for almost twenty-three years and only makes periodic visits to the U.S. . . . .").

[59] *Id.* at 1363 (quoting. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), *as amended* (July 2, 2001)).

contacts with the United States. In addition to Defendant's previously discussed contacts with Utah, Defendant was in regular contact with and reported to Stephen Bemis, his direct supervisor, who resides in Seattle, Washington.

Finally, for the same reasons previously discussed, exercising jurisdiction over Defendant is consistent with the due process principles of the Fifth Amendment. The Court, therefore, could also exercise jurisdiction over Defendant under Rule 4(k)(2).

D. JURISDICTION OVER REMAINING CLAIMS

A plaintiff must establish personal jurisdiction with respect to each claim he asserts.[60] Plaintiffs' Complaint invokes federal question jurisdiction only, however, Plaintiffs assert both state and federal claims. Having determined that the Court may exercise personal jurisdiction over Plaintiffs' DTSA claim, the Court must consider whether it may exercise pendent personal jurisdiction over the remaining state-law claims, even assuming the Court lacks an independent basis to assert personal jurisdiction over those claims.[61]

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.[62]

---

[60] 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002).

[61] The Court would have jurisdiction under the Fourteenth Amendment to the extent Plaintiffs assert diversity jurisdiction. However, to date, Plaintiffs have only asserted federal question jurisdiction. *See* Docket No. 2, at 4–5.

[62] *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citations omitted).

17

Here, all of Plaintiffs' claims arise out of the same nucleus of operative fact. Plaintiffs' claims are based on Defendant's allegedly improper use and disclosure of the sensitive information and materials Defendant obtained during the course of his employment with Plaintiffs and Plaintiffs' predecessors. Thus, even assuming the Court lacks personal jurisdiction over Defendant for Plaintiffs' state-law claims, the Court will exercise its discretion and will assert jurisdiction over these claims.[63]

III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 24) is DENIED. Defendant is ordered to respond to Plaintiffs' Motion for Temporary Restraining Order by February 23, 2018. The Court will set a hearing on the Motion for TRO.

DATED this 21st day of February, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[63] *Id.* at 1273 (stating that "even where a court could legally exercise pendent personal jurisdiction over a claim, a district court retains discretion").